IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SEAN BAPTISTE NEAL,

    Plaintiff,     No. CIV S-08-0313 GEB KJM P

  vs.

ROSEANNE CAMPBELL, et al.,

    Defendants.   ORDER AND

_____/  FINDINGS AND RECOMMENDATIONS

    Plaintiff is a California prisoner proceeding pro se with an action for violation of civil rights under 42 U.S.C. § 1983.  Before the court is a motion for summary judgment brought by defendants White, Cherry and Campbell.

I.  Motion For Summary Judgment

  A.  Summary Judgment Standard

    Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

/////

/////

/////

1

1

> Under summary judgment practice, the moving party

2
3
4

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

5   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

6   nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

7   judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

8   to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered,

9   after adequate time for discovery and upon motion, against a party who fails to make a showing

10  sufficient to establish the existence of an element essential to that party's case, and on which that

11  party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof

12  concerning an essential element of the nonmoving party's case necessarily renders all other facts

13  immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as

14  whatever is before the district court demonstrates that the standard for entry of summary

15  judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

16       If the moving party meets its initial responsibility, the burden then shifts to the

17  opposing party to establish that a genuine issue as to any material fact actually does exist.  See

18  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

19  establish the existence of this factual dispute, the opposing party may not rely upon the

20  allegations or denials of its pleadings but is required to tender evidence of specific facts in the

21  form of affidavits, and/or admissible discovery material, in support of its contention that the

22  dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

23  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

24  of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

25  (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

26  1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

1  return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

2  1436 (9th Cir. 1987).

3        In the endeavor to establish the existence of a factual dispute, the opposing party

4  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

5  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

6  versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

7  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

8  genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

9  committee's note on 1963 amendments).

10       In resolving the summary judgment motion, the court examines the pleadings,

11  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

12  any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

13  477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

14  court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

15  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

16  produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

17  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

18  1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

19  show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

20  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

21  'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

22       On August 13, 2008, the court advised plaintiff of the requirements for opposing a

23  motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154

24  F.3d 952, 957 (9th Cir. 1998) (en banc),  cert. denied, 527 U.S. 1035 (1999), and Klingele v.

25  Eikenberry, 849 F.2d 409 (9th Cir. 1988).

26  /////

1     B.  Allegations And Claims

2          In his amended complaint, signed under the penalty of perjury, plaintiff alleges the

3     following with respect to Campbell, White and Cherry, who he names as defendants.  Am.

4     Compl. at 3.

5          At all times relevant, plaintiff was a prisoner at Mule Creek State Prison.  In mid-

6     2005, defendant White met with plaintiff.  White informed plaintiff that if he became an "ameer"

7     – a leader within the Muslim community – at Mule Creek, he would be placed in administrative

8     segregation (Ad Seg).  Plaintiff suggests that White's message was based on the belief that

9     plaintiff's becoming an ameer would present security problems and was unrelated to any concern

10    related to plaintiff's practice of his religion.  Am. Compl. at 6-7.[1]

11         On October 7, 2005, plaintiff became the ameer of the Muslim community at

12    Mule Creek.  Id. at 8.  On October 9, plaintiff was placed in Ad Seg.  Id.  The reason he was

13    given for his placement in Ad Seg was that defendant Cherry discovered the presence of an

14    enemy of plaintiff's in the "A" facility where plaintiff was housed.  Id. at 10, 28.  The enemy was

15    discovered during an "ongoing investigation into plaintiff's alleged activities of promoting

16    extremist principles and gang practices in the sensitive needs yard Muslim community."  Id. at 10.

17    Later, plaintiff was informed that he actually had two enemies in the facility.  Id. at 8, 28.

18         On October 14, 2005, plaintiff appeared before a classification committee that

19    included defendant Campbell.  The committee ordered that plaintiff be detained in Ad Seg for

20    ninety days, for the duration of an investigation into the allegations that plaintiff had enemies in

21    A facility.  Id. at 8-9, 29.  Plaintiff was released from Ad Seg on February 6, 2006 when he was

22    transferred to Kern Valley State Prison.  Id. at 9.

23    /////

24    /////

25    ─────────────────
         [1]   Page references to the amended complaint are to those assigned by the court's CM/ECF
26    system.

4

1    On June 4, 2008, the court ordered service on defendants White, Cherry and

2  Campbell for alleged violations of the First Amendment, after screening plaintiff's amended

3  complaint under 28 U.S.C. § 1915A.[2]  See Order filed June 4, 2008 (Docket No. 8).

4    C.   Defendants' Arguments And Analysis

5    1.   First Amendment Claim

6    Defendants argue, in part, they should be granted summary judgment on plaintiff's

7  First Amendment claim because plaintiff did not have a First Amendment right to be an ameer at

8  Mule Creek.  In analyzing First Amendment free exercise of religion claims, the court considers,

9  among other elements, whether the government has placed a substantial burden on the

10  observation of a central religious belief or practice.  See, e.g., Hernandez v. Commissioner of

11  Internal Revenue, 490 U.S. 680, 699 (1989).  There is nothing before the court from which the

12  court could infer, as a threshold matter, that any of plaintiff's central religious beliefs or practices

13  were burdened by defendant White's discouraging plaintiff from becoming an ameer, and by

14  defendants Campbell's and Cherry's respective roles relating to plaintiff's placement in Ad Seg.

15  Plaintiff has not pointed to any facts demonstrating how his choosing not to become an ameer

16  would have restricted his exercise of his religion.  Plaintiff does suggest that the selection of an

17  ameer within a particular Muslim community is a "religious imperative."  Opp'n at 25:1-5.  But

18  plaintiff also says that the terms "imams" and "ameers" are essentially interchangeable.  Opp'n at

19  24:21-28 & Decl. of Sean Baptiste Neal (Neal Decl.) at 5 ¶ 24.  It is not disputed that there

---

[2]    Plaintiff also appears to have alleged he was retaliated against for filing prisoner
grievances about his religious diet, in violation of the First Amendment.  Am. Compl. at 10.
However, plaintiff failed to state a valid claim under the First Amendment in this respect because
he did not allege any facts suggesting any link between his filing grievances and any adverse conduct
by defendant White, Cherry or Campbell.  Moreover, the grievances related to religious diet attached
to the amended complaint appear to have been filed after plaintiff initiated this case.  Id. at 41-45.
For these reasons, no retaliation claim was ordered served.  See Pratt v. Rowland, 65 F.3d 802, 807
(9th Cir. 1995) (plaintiff must present evidence of link between protected activity and punishment
to be successful on First Amendment retaliation claim).  See also Ashcroft v. Iqbal, 129 S. Ct. 1937,
1949 (2009) (conclusory statements are insufficient to state valid claim for the violation of a federal
right).  Because no retaliation claim was served, the court does not consider defendants' motion for
summary judgment of a retaliation claim.

already was an "imam" at Mule Creek in mid- to late 2005.  Defs.' Mem. P. & A. In Supp. Summ. J. at 9:10-11 & Decl. of L. Hilliard ¶ 2; Opp'n at 5:20-22 & Neal Decl. at 3, ¶ 10 & 8 ¶ 34.  Plaintiff does not have the right to an imam (or ameer) of his own choosing.  <u>Reimers v. State of Oregon</u>, 863 F.2d 630, 631-32 (9th Cir. 1988).  The presence of the imam thus was sufficient to facilitate plaintiff's practice of his religion, making his becoming an ameer a discretionary act.  <u>See also</u> Neal Decl. at 8 ¶ 40 (plaintiff never told other Muslim inmates "they had to appoint an amir[3] before Ramadan").  Plaintiff also provides no evidence to support any claim that his placement in Ad Seg interfered with his practice of Islam.

### 2. Qualified Immunity

Defendants also are immune from plaintiff's claims under the qualified immunity doctrine.  Government officials performing discretionary functions generally are shielded "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).  In determining whether a governmental officer is immune from suit based on the doctrine of qualified immunity, the court consider two questions.  One is, taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?  <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001).  A negative answer ends the analysis, with qualified immunity protecting defendant from liability.  <u>Id.</u>  If a constitutional violation occurred, a court also inquires "whether the right was clearly established." <u>Id.</u>  "If the law did not put the [defendant] on notice that [his] conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." <u>Id.</u> at 202.  However, ". . . the [plaintiff] need not establish that the [defendant's] behavior had been previously declared unconstitutional." <u>Hydrick v. Hunter</u>, 500 F.3d 978, 989 (9th Cir. 2007) (internal quotations omitted).  The reasonableness of a defendant's conduct is judged "against the

---

[3]     Plaintiff uses both spellings, "ameer" and "amir."

1    backdrop of the law at the time of the conduct." <u>Brosseau v. Haugen</u>, 543 U.S. 194, 198 (2004).

2    The Supreme Court has emphasized that "the qualified immunity inquiry must be undertaken in

3    light of the specific context of the case." <u>Id.</u>

4             Recently, the Supreme Court has withdrawn its mandate that a qualified immunity

5    analysis must proceed under the <u>Saucier</u> sequence.  <u>Pearson v. Callahan</u>, __ U.S. __, 129 S.Ct.

6    808 (2009).  The Court held:

7             On reconsidering the procedure required in <u>Saucier</u>, we conclude
             that, while the sequence set forth there is often appropriate, it
8             should no longer be regarded as mandatory.  The judges of the
             district courts and the courts of appeals should be permitted to
9             exercise their sound discretion in deciding which of the two prongs
             of the qualified immunity analysis should be addressed first in light
10            of the circumstances in the particular case at hand.

11            Although we now hold that the <u>Saucier</u> protocol should not be
             regarded as mandatory in all cases, we continue to recognize that it
12            is often beneficial.

13   <u>Id</u>. at 818.  Given the particular circumstances of this case, the court sees no reason to depart

14   from the <u>Saucier</u> sequence.  As indicated above, there is nothing before the court suggesting that

15   plaintiff had a constitutional right to become an ameer while he was housed at Mule Creek.

16   Therefore, defendants are entitled to summary judgment on the ground of qualified immunity.

17            For the foregoing reasons, defendants' motion for summary judgment should be

18   granted and this case closed.

19   II.  <u>Defendants' Request To Seal</u>

20            Defendants ask that the court seal Attachment 2 to Exhibit A filed in support of

21   their motion for summary judgment.  Although the court has not relied on the exhibit in resolving

22   defendants' motion, the material included in Attachment 2 is appropriate for sealing.  To

23   preserve the record on defendants' motion, the court will grant the request to seal.

24   /////

25   /////

26   /////

Accordingly, IT IS HEREBY ORDERED that defendants' "motion for a protective order sealing exhibit and for in camera review" (#57) is granted.  The Clerk of Court is directed to scan the documents provided by defendants as Attachment 2 to Exhibit A and to file the scanned copy under seal, returning the original paper documents to defendants' counsel.

IT IS HEREBY RECOMMENDED that:

1.  Defendants' motion for summary judgment (#55) be granted.

2.  This case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  July 21, 2010.

_____
U.S. MAGISTRATE JUDGE

1/kly
neal0313 order 2 and f&r